IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 4:21-CR-00052 |
| v. | (Chief Judge Brann) |
| WAYNE S. KEEN, III, | |
| Defendant. | |

MEMORANDUM OPINION

NOVEMBER 16, 2022

On a routine home visit, probation officers searched the bedroom of Defendant, Wayne S. Keen, III, after observing a laptop computer in his bedroom that he was not permitted to have under the conditions of his probation. At that time, Keen was on supervised release pursuant to a sentence imposed by a Pennsylvania state court for possession of child pornography. Keen now seeks to suppress the evidence seized during the search of his bedroom. However, when compared to the general public, probationers like Keen have reduced privacy interests against governmental intrusion. Applying that more permissive standard, the Court concludes that the search was valid. Keen's possession of a computer that he was not allowed to have constitutes the reasonable suspicion required to search his home. Therefore, his Motion to Suppress will be denied.

I.  **BACKGROUND**

   A.  **Keen's State Court Conviction and Sentence**

In 2017, Keen was convicted of possession of child pornography in the Court of Common Pleas of Lycoming County.[1] Following his prison term, Keen was to serve a four-year period under the supervision of the Lycoming County Adult Probation Office.[2] As part of his probation, the Court ordered Keen to adhere to certain conditions, including "the standard written conditions of supervision, the special written conditions of supervision," and the "the special and supplemental written conditions for sexual offenders."[3]

These conditions included, in relevant part, that he (1) "at any time" submit to "warrantless search[es], with reasonable suspicion, of [his] person, car, or residence by [his] probation officer;" (2) provide probation staff "unlimited access to any computer or other multimedia device in [his] possession;" (3) "allow probation/parole supervision staff to search all programs and records maintained on any computer" in his possession, and (4) provide the probation staff with the serial number of any multimedia device in his possession.[4] Keen signed off on each of

---

[1] Doc. 30-1 at 1-3 (Keen Sentencing Order).
[2] *Id.*
[3] *Id.*
[4] *Id.* at 4-5 (Lycoming Cnty. Probation Rules), 13-14 (Lycoming Cnty. Optional Special Conditions for Sex Offenders). Keen also underwent polygraph tests. Doc. 38 at 41:16-42:15. Keen's probation officer, Katie Pratt, does not recall ever being alarmed at the results of Keen's polygraph tests. *Id.* at 42:19-25.

these conditions on February 16, 2018.[5] His then-probation officer, Loretta Clark, also signed off on these conditions.[6]

At the time of the search, Keen's probation officer was Katie Pratt.[7] Also at that time, the county probation office was closed to probationers due to the COVID-19 pandemic, so Pratt checked in on Keen and her other supervisees through home visits.[8] Pratt explains that the purpose of home visits was to confirm Keen and her other supervisees were complying with their probation conditions.[9] Pratt would visit Keen's home and perform a visual inspection every fifteen or twenty days.[10] However, due to the pandemic, during Pratt's first two visits—the only times she had visited Keen before August 7, 2020—she did not enter Keen's home.[11]

### B. Probation Officers Visit Keen's Residence

On August 7, 2020, Pratt and her partner, Officer Bryan Bower, visited Keen's residence, 1306 Park Avenue, Williamsport, Pennsylvania, where Keen lives with his mother.[12] Prior to the visit, Keen was charged with retail theft for stealing Gatorade from a local store.[13] Pratt wanted to follow up on that incident in addition

---

[5] Doc. 30-1 at 14 (Lycoming Cnty. Optional Special Conditions for Sex Offenders).
[6] *Id.*; *see also* Doc. 38 at 40:2-7, 74:11-19.
[7] Doc. 38 at 7:13-14.
[8] *Id.* at 10:1-15.
[9] *Id.* at 11:1-21.
[10] *Id.* at 12:3-17.
[11] *Id.* at 40:8-25.
[12] *Id.* at 13:11-15, 14:14-20.
[13] *Id.* at 13:16-14:13.

to assessing Keen's compliance with his probation conditions.[14] Both Pratt and Bower were in tactical gear clearly identifying them as law enforcement.[15]

The house at 1306 Park Avenue was divided into two apartments; Keen resided in the upper apartment.[16] Upon Pratt and Bower's arrival, there was a man seated on the porch.[17] As the officers approached, the man "yelled 'he's probably up there watching fucking kiddie porn.'"[18] The man never identified who he was or whom he was speaking about, but Pratt suspected it to be Keen, which caused her concern.[19] Without further interacting with the man on the porch, Pratt and Bower proceeded inside.[20]

Pratt does not exactly recall how she and Bower entered the locked front door of the building, but she recalls being let in by someone.[21] She also does not recall whether the person who let her and Bower in the front door had the authority to do so.[22] The officers continued to Keen's apartment on the second floor and knocked

---

[14] *Id.*
[15] *Id.* at 14:25-15:19.
[16] *Id.* at 15:25-16:7.
[17] *Id.* at 16:8-9.
[18] *Id.* at 19:6-10.
[19] *Id.* at 19:11-24. Keen recalls the individual as Mike Benson, a friend and occasional guest of the first-floor tenants. *Id.* at 77:18-25. Keen had asked Benson to leave 1306 Park Avenue on several occasions, to which Benson responded negatively, one time threatening to call Keen's probation officer and inform her that Keen possessed child pornography. *Id.* at 78:1-19. Keen further recalls calling Clark, and later Pratt, about Benson. *Id.* at 78:20-79:4. Pratt vaguely recalls Keen contacting her to inform her that he had some issues with the first-floor tenants but does not recall any of the details in Keen's account. *Id.* at 50:7-24.
[20] *Id.* at 20:2-4.
[21] *Id.* at 20:6-21:5.
[22] *Id.* at 48:10-19.

on the door once.[23] Keen's mother, Eva, answered.[24] Pratt asked if Keen was home, and Eva responded that he was upstairs, sleeping.[25] Eva quickly closed the door behind the officers, expressing concern that her dog might run outside the apartment.[26] At no point did Eva object to the officers' presence or try to exclude them from the residence.[27]

### C. The Search of Keen's Bedroom

Pratt then went to Keen's room and knocked on the closed door, announcing her presence.[28] Pratt knocked and announced herself three or four times before Keen answered the door.[29] After the third or fourth knock, Pratt threatened that she would forcibly enter the room if Keen did not open the door.[30] After the last knock, Keen answered the door.[31] Pratt asked him why he delayed in answering the door and instructed him to go downstairs where Bower was waiting, as was the typical practice for probation home visits.[32] Keen recalls Pratt's knocking awakening him from a nap and blames his delay in answering on post-nap grogginess.[33] He felt

---

[23] *Id.* at 21:14-22:1.
[24] *Id.* at 22:2-5.
[25] *Id.* at 22:6-9.
[26] *Id.* at 22:6-20.
[27] *Id.* at 23:5-7, 56:21-57:6, 70:25-71:3.
[28] *Id.* at 23:20-25.
[29] *Id.* at 24:1-15.
[30] *Id.* at 57:2-13.
[31] *Id.*
[32] *Id.* at 25:2-13.
[33] *Id.* at 80:1-22.

5

"intimidated" by Pratt's threats and denies ever giving Pratt consent to search his room.[34]

After ordering Keen downstairs but before entering his room, Pratt noticed a laptop computer in Keen's room that she could see from the doorway.[35] The presence of the computer immediately alerted Pratt's suspicion because Keen was not allowed to have a computer per his probation conditions.[36] Pratt had never given Keen approval to have the computer or any internet-capable device.[37] She explains that she never only verbally approves internet-capable devices for her supervisees; she always documents such approval.[38] Pratt was also unaware of any documented approval in Keen's file, which she reviewed.[39]

Keen explains that Clark, his former probation officer, permitted him to have computers, cell phones, and internet access.[40] Some of these devices belonged to his mother, but others belonged to him.[41] He further explained that Clark restricted him from using YouTube or other forms of social media, but not applications such as Netflix and Amazon.[42]

---

[34] *Id.* at 80:15-81:14.
[35] *Id.* at 25:14-25.
[36] *Id.* at 26:1-4.
[37] *Id.* at 60:9-61:1.
[38] *Id.* at 66:20-67:2.
[39] *Id.* at 67:3-11.
[40] *Id.* at 74:20-75:20.
[41] *Id.*
[42] *Id.* at 76:6-77:4.

Because Keen had taken so long to answer the door, Pratt was "was concerned that he was potentially trying to . . . destroy something."[43] She approached the laptop computer, which was "halfway" open.[44] Keen contends that the laptop was closed.[45] Pratt could not see the computer's screen in its half-opened position, however.[46] She then raised the lid completely.[47] The computer did not require a password.[48] On it, Pratt saw a "notes" application open, which contained several "tabs."[49] On one of the tabs, she saw a title that read "tight little ass," which she clicked on.[50] Although Pratt did not read the entire document, the tab revealed an in-progress story depicting "an adult having sexual relations with a child."[51] The subject matter of the story further concerned Pratt that Keen was violating the conditions of his probation.[52] Consequently, she took the laptop.[53] Neither she nor Bower questioned Keen about the laptop and she does not recall searching further into the laptop's contents.[54]

Downstairs, Keen was waiting with Officer Bower.[55] Keen attempted to leave the home, but Bower stopped him and told him he was not allowed to leave.[56] He

---

[43] *Id.* at 26:6-10.
[44] *Id.* at 26:9-18.
[45] *Id.* at 81:24-82:13.
[46] *Id.* at 59:3-5.
[47] *Id.* at 26:19-26.
[48] *Id.* at 26:22-25.
[49] *Id.* at 27:1-10.
[50] *Id.* at 28:3-7.
[51] *Id.* at 28:15-21.
[52] *Id.* at 28:22-24.
[53] *Id.* at 63:10-21.
[54] *Id.* at 64:4-13.
[55] *Id.* at 83:14-23.
[56] *Id.* at 83:21-84:1.

recalls Pratt coming down the stairs with the laptop and searching through it further.[57] Afterwards, Keen was arrested.[58]

After Pratt seized the laptop, she took it to a forensic laboratory operated by the Pennsylvania State Police, where forensic investigators performed an initial search, finding some evidence of child pornography on the laptop.[59] The Lycoming County District Attorney then obtained a warrant to search the laptop computer for any evidence suggesting Keen possessed, accessed, or disseminated child pornography.[60] The affidavit accompanying the warrant application used Pratt's home visit and the initial search as its factual basis.[61] That search was then used as the factual basis for a subsequent warrant to seize any and all pornographic media found on the laptop computer.[62]

### D. Procedural History

In March 2021, based on the search of the computer, Keen was indicted for receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4).[63] He pled not guilty and now moves to suppress the laptop computer and any other evidence collected from his bedroom as the fruits of an illegal search.[64] The Court held an

---

[57] *Id.* at 84:13-21.
[58] *Id.* at 85:17-18.
[59] Doc. 28-1 at 7 (Affidavit of Probable Cause).
[60] *Id.* at 6 (Search Warrant Application).
[61] *Id.* at 7 (Affidavit of Probable Cause).
[62] *Id.* at 8 (Seizure Warrant Application).
[63] Doc. 1 (Indictment).
[64] Doc. 28.

evidentiary hearing on Keen's Motion to Suppress, allowing the parties to submit additional briefing after the hearing.[65] The Motion has now been fully briefed and is ripe for disposition.

## II. DISCUSSION

Several facts lead to the conclusion that Pratt's search was justified. The Court first discusses Keen's argument that his sentencing order did not include the conditions of probation that the Government alleges he violated. Then the Court addresses the relevant Fourth Amendment standard for probationers with respect to searches and seizures, followed by application of that standard to the facts of this case, addressing Keen's arguments along the way. Lastly, the Court addresses Keen's arguments that the police failed to obtain a warrant to search the laptop computer after they seized it from his home.

### A. Keen's Sentencing Order

Keen first argues that he is not subject to the probation conditions the Government alleges he violated. He relies on *Commonwealth v. Koger*, a decision of the Superior Court of Pennsylvania.[66] In *Koger*, the court held that the Commonwealth failed to establish that the defendant violated a condition of his probation because there was no evidence that the trial court advised the defendant of that condition during sentencing.[67] The trial court itself acknowledged its omission,

---

[65] *See* Doc. 37.
[66] 255 A.3d, 1285 (Pa. Super. Ct. 2021).
[67] *Id.* at 1290-91.

explaining that it instead followed a generally observed practice under which the probation officer would explain the conditions to the supervisee following the sentencing hearing.[68]

By contrast, Keen's sentencing order explicitly references and incorporates the "special and supplemental conditions for sexual offenders"[69] This is far cry from the situation in *Koger*, where the sentencing court "did not advise" the defendant of his conditions at all, instead referring the defendant to a probation officer.[70] The Superior Court perceived that to be an improper delegation of the sentencing court's statutory duties to the probation office.[71] The Court concludes that the sentencing court's procedure here is consistent with *Koger* and accordingly rejects Keen's arguments to the contrary.[72]

---

[68] *Id.* at 1290.
[69] Doc. 30-1 at 2 (Keen Sentencing Order).
[70] 255 A.3d at 1290.
[71] *Id.* at 1291; *see also Commonwealth v. Foster*, 214 A.3d 1240, 1244 n.5 (Pa. 2019) (similarly reversing a probation revocation where the sentencing court "*never mentioned* the conditions of his probation in reaching its decision, and no order of probation appear[d] in the certified record on appeal." (emphasis added)).
[72] Furthermore, it is unclear what relevance the legal status of the probation conditions has on a probationer's reduced Fourth Amendment interest against future searches. *See Commonwealth. v. Burns*, 2022 WL 2092534, at *4 (Pa. Super. Ct. June 10, 2022) ("The holdings in [*Foster* and *Koger*] merely conclude that a court may not revoke probation unless a defendant has violated a specific condition of probation. The failure of a court to attach specific conditions to a probation order does not render those conditions illegal."); *id.* ("Further, our review of decisions implicating *Foster* confirms our assessment that neither *Foster* nor *Koger* requires a finding of illegality of the sentence if the trial court failed to specifically advise defendant of the conditions of probation at the initial hearing."). It would accordingly appear that the prospective legal force of Keen's probation conditions does not turn on their inclusion in the sentencing order and therefore does not affect Pratt's reasonable suspicion that Keen violated his conditions.

### B. Keen's Privacy Interests as a Probationer

For Fourth Amendment purposes, probationers have a reduced privacy interest when compared to the average public.[73] The Supreme Court of the United States has held that searches of probationers are governed by the reasonable-suspicion standard when the search is premised on probation conditions of which the probationer is aware.[74] The conditions of Keen's probation at issue here are already anchored to this standard.[75] Therefore, to lawfully search Keen's home or personal property, Pratt must have had a "particularized and objective basis" for suspecting that Keen violated a condition of his probation on August 7, 2020.[76] Under the reasonable suspicion standard, the Court "consider[s] the totality of the circumstances from the perspective of an objective law enforcement officer."[77]

### C. Clark's Alleged Authorization

Keen maintains that his former probation officer, Clark, authorized his use of several internet-capable devices. The Court finds this evidence irrelevant, even if it considered Keen a credible source.[78] Pratt's search is measured by the information available to her in the moment, not the prior unrecorded actions of another probation

---

[73] *United States v. Knights*, 534 U.S. 112, 119 (2001).
[74] *Id.*; *United States v. Henley*, 941 F.3d 646, 650 (3d Cir. 2019).
[75] *See* Doc. 30-1 at 4 (Lycoming Cnty. Probation Rules) ("I understand that I may be required at any time, to undergo a warrantless search, with reasonable suspicion, of my person, car, or residence by my Probation Officer.").
[76] *Henley*, 941 F.3d at 651 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).
[77] *United States v. Sanchez*, 398 F. App'x 840, 842 (3d Cir. 2010) (citing *United States v. Silveus*, 542 F.3d 993, 1000 (3d Cir.2008); *Whren v. United States*, 517 U.S. 806, 813 (1996)).
[78] Keen did not call Clark to testify at the evidentiary hearing.

officer of which Pratt had no personal knowledge. Pratt testified that she reviewed Keen's "paper file" and found no written approvals or authorizations for Keen to have a laptop computer or any other device.[79] Therefore, it is immaterial whether Keen had approval from Clark because there was no record of that approval for Pratt to view prior to August 7, 2020.

### D. Pratt's Entry into 1306 Park Avenue

Pratt's entry into 1306 Park Avenue is the first intrusive action she took and therefore requires justification. She recalls being let into the front door but cannot recall who let her in.[80] In any event, Keen lacks standing to challenge the officers' entry, as the front door opened into what the Court finds is a common hallway and stairwell between the two apartments.[81] Additionally, even though it is unclear who let Pratt in, she testified the door was locked, which means that someone had to let her in. Whoever this person was, it is likely that they had at least the apparent authority to allow entry into the common area of the house by virtue of their ability

---

[79] Doc. 38 at 60:6-61:1, 66:20-67:11.
[80] As for the information available to her at that point, Pratt's concern was first aroused by Mike Benson's exclamation that Keen was viewing child pornography. Keen maintains he told Clark, and possibly Pratt, that he and Benson had something of an adversarial relationship and that in the course of that relationship, Benson had threatened to blackmail Keen. Again, there is no record evidence that Pratt was aware that Benson had previously threatened Keen. Nevertheless, the Court finds that the unprompted exclamation of a total stranger is not sufficient to meet the reasonable suspicion standard. But it moves the needle, even if slightly.
[81] *See United States v. Correa*, 653 F.3d 187, 190-91 (3d Cir. 2011) (concluding that defendant did not have standing "in the common areas of a multi-unit apartment building with a locked exterior door," as "a resident lacks an objectively reasonable expectation of privacy" in such areas, as "any resident in the multi-unit apartment building could admit guests, delivery people, repair workers, postal carriers, custodians, and others into the common areas").

to unlock the door.[82] Therefore, the Court finds the officers' entry into 1306 Park Avenue justified.

But Pratt's entry into Keen's apartment must have its own independent justification. On this issue, the record indicates that Eva Keen, Keen's mother, consented to Pratt's entry. She never sought to exclude the officers. As Pratt's understanding was that Keen was living with his mother, Eva Keen had the apparent authority—if not the actual authority—to consent to the officers' entry. Accordingly, the Court finds that Eva Keen consented to the officers' entry.

### E. Pratt's Search of Keen's Bedroom

As an adult son on probation living with his mother, it is unclear whether Keen has a right to privacy in his bedroom. He does not appear to be a lessee with an independent property interest in his room. It is also unclear whether Keen consented or failed to object to Pratt's entry.

Nevertheless, the Court concludes that Pratt developed reasonable suspicion after knocking on Keen's door three times to no avail. Many courts have found reasonable suspicion when a known offender delays in answering the door.[83] It is

---

[82] Keen relies on Pratt's expression that she did not know whether the individual who let her in had the authority to do so to argue that she did not have consent to enter. But the Fourth Amendment does not turn on what Pratt subjectively knew or did not know. The Court concludes that a reasonable officer in Pratt's shoes could infer that the individual who let her into a locked door had the authority to do so.

[83] *See United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005) (finding reasonable suspicion where officers "had knowledge of [the defendant's] two prior convictions" and defendant "delayed ten minutes in opening the door"); *United States v. Hamilton*, 591 F.3d 1017, 1023-24 (8th Cir. 2010) (finding reasonable suspicion where officers knew of

unclear exactly how long Pratt waited.[84] But she knocked and announced her presence three times loudly enough for Keen to hear and had at least some reason to believe that Keen was viewing child pornography, based on Benson's comment.[85]

Moreover, Pratt testified that she saw the laptop computer "before [she] even stepped into the room."[86] Therefore, even if Pratt did not have reasonable suspicion when Keen failed to answer the door, she had it when she saw the laptop, a violation of Keen's probation.

As for the laptop's seizure, when an officer observes contraband from an otherwise lawful viewpoint, the plain view exception may be applicable. "There are three requirements for valid seizures of evidence in plain view."[87] "First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the incriminating character of the evidence must be immediately apparent. Third, the officer must have a lawful right of access to the object itself."[88]

When Keen opened the door, Pratt had not yet entered Keen's bedroom, so she had not violated whatever privacy right Keen had in his bedroom. She also had reasonable suspicion to search when he failed to answer the door. As discussed

---

    defendant's previous convictions related to child pornography and defendant delayed an "inordinate amount of time" before answering the door).
[84] Doc. 38 at 71:17-24.
[85] *Id.* at 24:3-15.
[86] *Id.* at 25:20-25.
[87] *United States v. Stabile*, 633 F.3d 219, 241 (3d Cir. 2011).
[88] *Id.* (quoting *Horton v. California*, 496 U.S. 128, 141 (1990).

above, she did not violate the Fourth Amendment in arriving at Keen's door because she had Eva Keen's consent to be in the residence and reasonable suspicion to search Keen's room. And from her lawful vantage point, she saw a computer, possession of which was a violation of Keen's probation conditions. It is immaterial whether a different probation officer gave verbal approval for Keen to have a device because there was no record of the approval in Keen's file. Therefore, the incriminating character of the laptop was readily apparent to Pratt. That gave her the right to enter the bedroom to access the laptop and seize it. Accordingly, her initial search and subsequent seizure of the laptop were both justified.

## F. The Subsequent Search of the Laptop

Although the investigating officers eventually obtained a warrant, their initial search of the laptop occurred without a warrant. Keen correctly points out that the officers could have obtained a warrant before their initial search of the laptop. However, the Court concludes that Keen's substantially reduced privacy interests did not require the officers to obtain a warrant before their initial search. As per his probation conditions, upon a finding of reasonable suspicion, Keen's property was subject to warrantless search. And as the Court concluded above, Pratt had reasonable suspicion when Keen failed to answer the door and when she saw the laptop through the doorway. Therefore, she was not required to obtain a warrant to search the laptop.

## III.   CONCLUSION

For the foregoing reasons, Keen's Motion to Suppress is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge